## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | |
|---|---|
| GARY HOLLAND, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO: |
| ST. FRANCIS HEALTH, LLC d/b/a ST. FRANCIS HOSPITAL, | |
| Defendant. | |

## COMPLAINT

Plaintiff, Gary Holland by and through counsel, hereby files this Complaint against St. Francis Health, LLC, d/b/a St. Francis Hospital (hereafter "St. Francis" or "Defendant") and alleges as follows:

### INTRODUCTION

1.

This is an action to recover for violation of Plaintiff's rights under Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008. Plaintiff brings this action on account of Defendant's denial of several reasonable requests for the accommodation of his disabilities, effectively refusing to engage in the interactive process required by law and forcing his resignation. In doing so, Defendant ignored Plaintiff's years of service, strong performance, and need for minimal accommodations due to his disabilities.

Plaintiff is seeking back pay, compensatory and punitive damages, and attorneys' fees to remedy these violations of federal law.

## JURISDICTION AND VENUE

2.

This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq.* (the "ADAAA") and 42 U.S.C. § 2000e-5(f)(1) as applied to ADAAA claims pursuant to 42 U.S.C. § 12117.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Plaintiff's rights alleged below were committed in this judicial district and division.

## PARTIES

4.

Plaintiff Gary Holland is a citizen of the United States and submits to personal jurisdiction of this Court.

5.

Plaintiff is and, at all times relevant hereto, was an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).  Specifically, he is a person with a disability inasmuch as he actually has physical impairments causing

substantial limitation in one or more major life activities and because he has record of having such impairments.

6.

At all relevant times, Plaintiff was and is a "qualified individual" as defined by 42 U.S.C. §12111(8) of the ADAAA because he was able to perform the essential functions of his position as an Application Support Analyst with reasonable accommodation for his disability.

7.

Defendant, St. Francis Health, LLC is a Domestic Corporation registered to do business in the State of Georgia and is an entity subject to suit with its principal place of business located at 2122 Manchester Expressway, Columbus, GA, 31904. It may be served by delivering process to its registered agent, Neal Callahan, at 111 12th Street, Suite 300, Columbus, GA, 31902, USA.

8.

Defendant is an "employer" within the meaning of the ADAAA, 42 U.S.C. § 12101 *et seq*., because it has engaged in commerce or in an industry affecting commerce within the meaning of the ADAAA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.

Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about December 22, 2020, which was within 180 days of the occurrence of the adverse employment actions taken against him.

10.

On or about January 6, 2021, Plaintiff received a Notice of Right to Sue from the EEOC relating to his charge of discrimination, charge number 410-2020-08500. This civil action is instituted in the appropriate federal district court within ninety (90) days of the receipt of said Notice.

## STATEMENT OF FACTS

11.

Defendant St. Francis is a health care provider operating a hospital and administrative offices in Columbus, Georgia.

12.

St. Francis employs more than 2,300 employees at its facilities in Columbus, Georgia.

PLAINTIFF'S WORKPLACE

13.

Plaintiff Gary Holland worked for St. Francis Hospital full-time from approximately November, 2004, to approximately August 10, 2020.

14.

Most recently, Plaintiff worked as an Application Support Analyst for the St. Francis IT Department.  In that capacity Plaintiff was responsible for reviewing various requests for technical issues such as password problems and other computer troubleshooting matters.  Plaintiff would receive requests through "help tickets."  He would review them and either resolve the issue himself or assign the problem to others.

15.

The majority of Plaintiff's work was done over the phone, by e-mail, or through remote access to an employee's work station.

16.

The St. Francis' IT Department where Plaintiff worked is located in a building, called the "G" building. The "G" building can be found in the St. Francis Medical Office Park as a stand-alone building separate from the Columbus hospital.

17.

Previously, St. Francis leased the "G" Building to doctors independent from the hospital to treat patients. However, the building is no longer used for this purpose and, instead, is used as office space.  There are approximately 20 offices for around 30 employees in the building.

18.

The particular office where Plaintiff worked was a space that was approximately 8 by 17 feet and was shared with another employee.

19.

Plaintiff worked at a desk that was permanently attached both to the floor and to a wall to his left.  Plaintiff's officemate's desk was attached to the opposite wall.  There is a fixed window in front of Plaintiff's desk, and a floor-to-ceiling three-foot long partition separating Plaintiff's desk from that of his co-worker.

20.

If they were the only two people in the office, Plaintiff and his officemate could work simultaneously while remaining at least six feet apart.

PLAINTIFF'S DISABILITIES

21.

Plaintiff is a 70-year-old male with Type 2 diabetes.

22.

Because of his diabetes, Plaintiff must monitor his sugar levels and inject insulin twice a day.

23.

As a result of his diabetes, Plaintiff is at a higher risk of more severe symptoms and complications from COVID-19 if he were to be infected.

24.

In addition, in April 2003, Plaintiff was diagnosed with liver cancer, which required a liver transplant that Plaintiff was able to receive in May of 2003.

25.

Plaintiff's transplant left him with a liver that cannot and will not function without daily immunosuppressants that themselves leave him vulnerable to infection.  Specifically, the immunosuppressants prevent his body's immune system from attacking and destroying the functionality of his liver.

26.

Plaintiff also suffers from prostate cancer, which was diagnosed in 2018 and for which he is currently undergoing treatment.

27.

In 2019, Plaintiff had 45 days of radiation therapy, which has weakened his immune system.

28.

Due to Plaintiff's multiple impairments, as well as the treatments and medications required by these impairments, Plaintiff is considered to be immunocompromised and at high risk of contracting COVID-19.

29.

If Plaintiff were to contract COVID-19, his compromised immune system would not be able to fight the infection and it could likely be fatal or result in a secondary medical condition that could also prove fatal.

30.

Due to his high-risk status, Plaintiff has had many conversations about his disabilities and need for a safe work space with his supervisor, William Chiles, the hospital's Director of IT Systems and Technology.

31.

Specifically, Plaintiff made Mr. Chiles aware of his need for accommodations on account of his suppressed immune system and use of immunosuppressants.

ST. FRANCIS' RESPONSE TO COVID-19

32.

In March of 2020, St. Francis responded to the outbreak of COVID-19 by requiring its employees, including Plaintiff, to work remotely from home.

33.

Plaintiff was issued a company laptop and his cellphone was set up to receive work calls.

34.

While working from home, Plaintiff was able to remote in to work from the company laptop and respond to any help tickets or assign them to others just as he had been doing prior to the pandemic.

35.

All communication with employees and other hospital personnel was effectively handled over the phone, by e-mail, or by remote access to the individual's workstation.

36.

Plaintiff was actually more productive in his role while working from home because there were no office distractions to keep him from his work.

37.

During his time working from home, Plaintiff was able to complete all his job responsibilities and received no complaints about his work performance.

38.

In April 2020, St. Francis Hospital began to furlough some of its employees. Specifically, in the IT Department, three employees, including Plaintiff, were furloughed.

39.

On or about July 9, 2020, Plaintiff's supervisor, Mr. Chiles, notified Plaintiff that his furlough was coming to an end and that he would need to return to the St. Francis IT Department in the "G" Building within the next week.

40.

While the St. Francis main hospital building was imposing a mask mandate, the same was not true for the "G" Building and IT Department, which only encouraged but did not require masks.

41.

In fact, employees working in Plaintiff's area did not take the wearing of masks seriously, often not wearing them or wearing them inappropriately.

42.

Moreover, while Plaintiff's job rarely if ever required his face-to-face interaction with hospital personnel, the same was not true of his officemate.

43.

Plaintiff's officemate was responsible for submitting payroll issues and information to the Payroll Department as well as handling purchase requests for the IT Department.

44.

The work Plaintiff's officemate performed often required her to meet in person with IT Department employees throughout the day.

45.

The result was that employees frequently trafficked in and out of the shared office space after having worked in or visited various other parts of the hospital, including patient care areas and areas exposed to COVID-19.

46.

As of July 2020, there was no new or different protocol for working with employees in the IT Department or in "G" Building.

REQUEST FOR JOB ACCOMMODATIONS

47.

Due to the high risk of exposure to COVID-19 given his workplace setting, Plaintiff requested several reasonable accommodations for his disabilities.

48.

As he had done in the past on account of his many health conditions,

Plaintiff expressed his concerns about working in-person to his supervisor, Mr. Chiles.

49.

Plaintiff reiterated that, since he was 70 years old, diabetic, and taking immunosuppressants for his liver, he felt it was too dangerous for him to return to work in-person and requested to continue to work from home.

50.

With no other explanation than the fact that Plaintiff was an hourly employee and working from home was a temporary assignment, Mr. Chiles rejected this request for accommodation.

51.

In response, Plaintiff requested a second reasonable accommodation – to work in one of the empty offices in the basement of the Flowers Building, which was a building that the IT Department used to occupy before it was moved to "G" Building.

52.

Since this building was directly across the street from "G" Building, working from there would allow Plaintiff to still work in close proximity to the hospital but without being in a high traffic area thus reducing his potential exposure to the virus.

53.

Mr. Chiles denied this request as well offering only the excuse that the hospital was not planning to continue the lease for that office.

54.

In response to this denial, Plaintiff requested a third reasonable accommodation – the installation of a Plexiglass sneeze guard barrier between his work desk and that of his co-worker so as to lower the risk of possible exposure given the high personnel traffic in the office.

55.

This time, Mr. Chiles contacted the Human Resources Department about Plaintiff's accommodation requests.

56.

Unfortunately, Human Resources denied this request as well, offering that if they granted such an accommodation to Plaintiff, they would have to grant the same accommodation to everyone, and that they were not going to do that.

57.

On information and belief, Defendant's Human Resources Department had no other similar such requests for accommodation.

CONSTRUCTIVE DISCHARGE

58.

In response to Plaintiff's repeated requests for accommodation, St. Francis offered only that Plaintiff should look out for himself by socially distancing, wearing his own mask, and washing his hands.

59.

In other words, St. Francis offered to make no accommodations for Plaintiff whatsoever.

60.

As confirmation of this fact, Plaintiff asked his Director if others in the IT Department building would be required to also wear masks and socially distance. The answer was that while recommended, it would not be required of everyone.

61.

Given St. Francis refusal to accommodate his disabilities, Plaintiff spoke to his doctors, who informed him that it would not be safe to return to work in-person without taking the precautions Plaintiff requested.

62.

In an effort to determine his options, Plaintiff spoke with his supervisor, Mr. Chiles, explaining that he felt it would be too dangerous for him to return to work without the requested accommodations under the current COVID-19 conditions.

63.

Mr. Chiles told Plaintiff that if he was unwilling to return, he would have to submit his resignation.

64.

Based on the refusal to allow him a reasonable accommodation, the refusal to engage in any interactive process designed to meet the needs of his disabilities, and the recommendations of his healthcare providers, Plaintiff was forced to resign his position as Application Support Analyst for St. Francis on or about August 10, 2020.

65.

Defendant's actions, by and through St. Francis' officers and managers, were done intentionally, willfully and in a bad faith violation of Plaintiff's rights under the ADAAA.

66.

The effect of the above-stated actions has been to deprive Plaintiff of employment opportunities, income in the form of wages, and prospective employment benefits, including social security and other benefits to which he would have been entitled but for these illegal actions.

67.

The effect of Defendant's above-stated actions, by and through St. Francis'

officers and managers, has also caused Plaintiff out-of-pocket losses, including attorney's fees, and mental and emotional distress for which he seeks compensation.

68.

As a result, Plaintiff is entitled to actual damages, including back pay, front pay (or, alternatively, reinstatement), compensatory, and punitive damages, as well as attorney's fees for Defendant's violations of the law.

**COUNT ONE**
**VIOLATION OF ADAAA – FAILURE TO ACCOMMODATE**

69.

The allegations contained in paragraphs 1 through 68 are hereby incorporated by this reference.

70.

At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

71.

At all times relevant hereto, Plaintiff was an individual with a disability and/or a record of disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1) as amended.

72.

Moreover, at all times relevant hereto, Plaintiff has been a qualified
individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) in that
he was able to perform the essential functions of his job either with or without
accommodation.

73.

While working for St. Francis, Plaintiff was entitled to a reasonable
accommodation for his disability and/or record of disability under Section 102 of
the ADAAA.

74.

 In July and August of 2020, Plaintiff made requests for reasonable
accommodations for his disabilities.

75.

The accommodations Plaintiff requested were reasonable in that they would
have allowed him to perform the essential functions of his job without any undue
hardship on the part of the Defendant.

76.

Defendant, by and through its agents at St. Francis, forced Plaintiff's
resignation because it refused to engage in the interactive process required under
the ADAAA and did not wish to provide him with reasonable accommodations.

77.

By essentially terminating Plaintiff's employment, Defendant violated Section 102 of the ADAAA which prohibits discrimination against an otherwise qualified individual with a disability because of the need to make reasonable accommodations for his impairments.

78.

Defendant, by and through its agents at St. Francis Hospital, intentionally, with reckless indifference to Plaintiff's rights, violated Section 102 of the ADAAA by essentially terminating his employment, despite the clear prohibition of taking adverse action against otherwise qualified individuals based on the need for reasonable accommodation.

79.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

80.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT TWO
## VIOLATION OF ADAAA – DISABILITY DISCRIMINATION

### 81.

The allegations contained in paragraphs 1 through 68 are hereby incorporated by this reference.

### 82.

At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

### 83.

At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A) as amended.

### 84.

Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) in that he was able to perform the essential functions of his job either with or without accommodation.

85.

At all times relevant hereto, Defendant was aware of Plaintiff's disability and his ability to perform his job with reasonable accommodations.

86.

Despite his ability to perform his job with a reasonable accommodation, Plaintiff was forced to resign, which action was taken on account of Plaintiff's disabilities and in order to avoid the need to accommodate those disabilities.

87.

Defendant's actions, by and through the officers and directors at St. Francis, amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112 which prohibits discrimination on the basis of disability.

88.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

89.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT THREE
### <u>VIOLATION OF ADAAA – RECORD OF DISABILITY</u>

90.

The allegations contained in paragraphs 1 through 68 are hereby incorporated by this reference.

91.

At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

92.

At all times relevant hereto, Plaintiff was an individual with a disability and record of disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1) as amended.

93.

Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability and a record of disability as those terms are defined by 42 U.S.C. § 12111 (8) in that he was able to perform the essential functions of his job either with or without accommodation.

94.

At all times relevant hereto, Defendant was aware of Plaintiff's disability and record of disability as well as his ability to perform his job with or without accommodations.

95.

Despite his ability to perform his job with or without accommodation, Plaintiff was forced to resign, which action was taken on account of Plaintiff's disability and/or record of disability in order to avoid accommodation of Plaintiff's disability.

96.

Defendant's actions, by and through the officers and directors at St. Francis Hospital, amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112 which prohibits discrimination on the basis of disability.

97.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

98.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

### RELIEF

Plaintiff demands a TRIAL BY JURY and requests the following relief:

(a)     judgment in favor of Plaintiff and against Defendant under Counts One, Two, and/or Three for its unlawful employment practices;

(b)     an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA and from retaliating against Plaintiff or any witness for their participation in this action;

(c)     damages sufficient to make Plaintiff whole by providing for out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(d)     reinstatement or front pay damages sufficient to make Plaintiff whole for the loss of continued employment with the Defendant through retirement in an amount to be proven at trial;

(e)     compensatory damages for Plaintiff's mental and emotional distress incurred as a result of Defendant's unlawful actions alleged under Counts One, Two, and/or Three;

(f)     punitive damages under Counts One, Two, and/or Three in an amount to be determined by a jury and sufficient to punish Defendant for its intentional violations of the ADAAA and deter Defendant's like conduct in the future;

(g)     Plaintiff's reasonable attorney's fees and costs; and

(h)     such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ John F. Beasley, Jr.
John F. Beasley, Jr.
Georgia Bar No. 045010
jfbeasley@jfbeasleylaw.com

JF BEASLEY, LLC
31 North Main Street
P.O. Box 309
Watkinsville, GA 30677
Telephone:   706-769-4410
Facsimile:   706-769-4471

Counsel for Plaintiff